## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

FILED

04 MAY 12 AM 10: 27

CLERK-ALBUQUERQUE

| | | |
|---|---|---|
| Santa Fe Properties, Inc.,<br>  a New Mexico corporation, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. |
| | ) | |
| French & French Fine Properties, Inc.<br>  a New Mexico corporation; | ) | |
| Michael French, Qualifying Broker for<br>  French & French Fine Properties, Inc.;<br>  and | ) | |
| Robert O'Connor, whose Web address is<br>  www.prestigesantafeproperties.com, | ) | **CIV - 04 - 0518 JB  DJS** |
| | ) | |
| Defendants. | ) | |

### COMPLAINT FOR TRADEMARK INFRINGEMENT
### AND ENFORCEMENT OF AGREEMENT TO CEASE INFRINGING

Santa Fe Properties, Inc. ("Santa Fe Properties" or "Plaintiff"), by its attorneys, for its

complaint against defendants French & French Fine Properties, Inc. ("French & French"),

Michael French, qualifying broker for French & French ("Qualifying Broker"), and Robert

O'Connor ("Defendant O'Connor"), alleges that:

### INTRODUCTION

In this action Plaintiff seeks relief from trademark infringement by Defendants in the

form of injunctive relief and damages.

Complaint for Infringement                    1

## JURISDICTION AND VENUE

1.      This Court has subject matter jurisdiction as provided in 28 U.S.C. §§1331 and 1338 (a) and (b) and 15 U.S.C. §1121 over the matters complained of in the Second through Fourth Claims for Relief, which allege violations of the United States Trademark Act of 1946, as amended, 15 U.S.C. §§1501, *et seq.* ("Lanham Act").  This court also has supplemental jurisdiction over the remaining claims as provided in 28 U.S.C. §1367.  Venue is proper as provided in 28 U.S.C. §1391 because Defendants reside in New Mexico, all Defendants are doing business in New Mexico, and because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this judicial district.

2.      Plaintiff has its principal place of business in New Mexico.

3.      On information and belief, French & French was at all material times a real estate brokerage company authorized to conduct real estate activities as provided in the New Mexico Real Estate Licensing Law, NMSA 1978 §61-1-1, *et seq.*, and by the New Mexico Real Estate Commission, NMSA 1978 §61-29-4, *et seq.*

4.      On information and belief, at all material times Michael French was both a principal of French & French and a qualifying broker of French & French as provided for in the New Mexico Real Estate Licensing Law, NMSA 1978 §61-1-1, *et seq.*, and was authorized to engage the services of other associate brokers and salespersons as associates of French & French.

5.      On information and belief, at all material times the Qualifying Broker of French & French engaged the services of other associate brokers and salespersons as associates of French & French (collectively, "French Agents").

6.    The Qualifying Broker was and is responsible for supervising all real estate related activities conducted by any associate brokers and salespersons, including the French Agents.

7.    The Qualifying Broker was and is responsible for advertising real property for sale, purchase, lease, exchange, or rent, or other real estate services in a manner that does not confuse or mislead the public.

8.    The Qualifying Broker was and is responsible for ensuring that all advertising by associate brokers and salespersons, including the French Agents, complies with all state and federal laws, including U.S. Trademark Laws (Lanham Act).

9.    The Qualifying Broker was and is responsible for all real estate advertising of real property of others or advertising of real estate services by all French Agents.

10.    The Qualifying Broker was and is responsible for all real estate advertising of real property of others or advertising of the French Agents and of French & French including, but not limited to, computer presentations and electronic transmissions such as the Internet and e-mail.

11.    On information and belief, Defendant O'Connor, whose Web address is prestigesantafeproperties.com, is an associate broker of the Qualifying Broker.

12.    On information and belief, French & French is a New Mexico corporation having a principal place of business in New Mexico; Michael French, the Qualifying Broker, is a resident of New Mexico; and Robert O'Connor is a resident of New Mexico.

## NATURE OF THE ACTION

13.    Plaintiff adopted and used several service marks and trademarks in interstate commerce for goods and services associated with the real estate industry.  Over time, Santa Fe Properties obtained federal registration for at least five (5) trademarks and service marks in the

United States Patent and Trademark Office on the Principal Register. Federal registration in the Trademark Office confirms exclusive ownership of those marks by Santa Fe Properties. A Certificate of Registration of a trademark or service mark on the Principal Register of the U.S. Trademark Office is *prima facie* evidence of the ownership and validity of a registered mark and of registration of the mark, and of a registrant's exclusive right to use the registered mark in commence. Included among those marks are SANTA FE PROPERTIES®, U.S. Registration No. 2,382,332 issued September 5, 2000;  SANTA FE LIVING®, U.S. Registration No. 2,463,589, issued June 26, 2001; THE SIGN OF REAL ESTATE IN SANTA FE®, U.S. Registration No. 2,331,607, issued March 21, 2000;  OFFERING THE BEST OF SANTA FE LIVING®, U.S. Registration No. 2,804,483, issued January 13, 2004;  and a design mark consisting of a corbel-and-ristra, U.S. Registration No. 2,323,597, issued February 29, 2000 ("Santa Fe Properties' Marks"). Certified copies of the Registrations for the Santa Fe Properties' Marks are attached to this Complaint as **Exhibit A-1** through **Exhibit A-5**.

14.    Santa Fe Properties has used the Santa Fe Properties' Marks since a date long before any date of use of any of the Santa Fe Properties' Marks by Defendants. Santa Fe Properties has invested considerable time, funds, and effort over many years to develop and protect the good will and reputation of the Santa Fe Properties' Marks.

15.    French & French, the Qualifying Broker, and Defendant O'Connor are usurping and misappropriating Santa Fe Properties' reputation and good will by using all or some of the Santa Fe Properties' Marks, including its house mark SANTA FE PROPERTIES®, for the pecuniary gain of French & French, the Qualifying Broker, and Defendant O'Connor (collectively, "Defendants"). Defendants are infringing, diluting, tarnishing, disparaging and blurring the Santa Fe Properties' Marks and Santa Fe Properties' good will and reputation

associated with the Santa Fe Properties' Marks by their use of the marks in an unauthorized, deceptive manner.

16.    As a result of Defendants' separate and collective acts of infringement and deceptive and unfair trade practices by use of Plaintiff's marks, Santa Fe Properties has been damaged and may lose substantial revenue, and its reputation is being irreparably damaged.

17.    Unless Defendants are enjoined from continuing their deceptive and unauthorized use of the Santa Fe Properties' Marks, Santa Fe Properties' business and reputation will continue to be irreparably harmed.    Accordingly, this action seeks immediate injunctive relief and damages against Defendants to prevent further harm, and to compensate Santa Fe Properties for previous harms, as set forth in this Complaint.

## FACTS COMMON TO ALL CAUSES OF ACTION

### Web Sites

18.    As described in this Complaint and evidenced by the attached Exhibits, Defendants own, operate, maintain, and control one or more World Wide Web ("Web") sites (collectively, "French Web Sites").

19.    In general, Web sites, are assigned a variety of second-level domain names under the Domain Name System, and are constructed using hypertext mark-up language ("HTML") that specifies formatting and other document attributes based on international standards, and currently exemplified by HTML 4.01.  Various mark-up items and characters on the Web sites include "tags." Tags are instructions used by programmers in formatting a Web page, also called a "document."

20.    One type of HTML tag is a "metatag."   Metatags are programming terms describing the Web document that appears on a computer monitor.  Included among such

metatags are the "description," a short description of the document, and "keywords," a list of important words for the document.

21.    Using a software program known as an "editor," a person responsible for building a Web page selects and specifies desired metatags. Metatags are selected for use on a Web page in hopes of attracting persons searching the Web by using a search engine and browsers (as more fully described in this pleading) to their particular Web site.

22.    Browsers are computer programs that enable a user to read HTML language residing either in files or on the Web. Web browsers include, among others, Netscape® and Microsoft Explorer®.

23.    A search engine is a computer program that reviews large amounts of text or other data, for example Google®, Alta Vista® and Yahoo!®. Search engines acquire information for search engine databases by scanning, sweeping, or searching the Web to read as many Web pages as possible. For example, on March 3, 2004, the Google® search engine swept over 4 billion Web pages for information.

24.    Three key components are significant to search engine functionality: (1) the "search term" typed in by a user, (2) the database of Web site-related information that a search engine uses to analyze and respond to the user's request, and (3) the results page created to display responses to the user. For example, a user might use a search engine to search for skiing-related Web sites by typing the word "skiing" as a search term into a designated space. After running the search against the search engine's database of Web site-related information, the search engine will display the results on a page often referred to as a "search results page." The search results page includes a list of "hits" generated from a comparison of the search term of the search engine's database using a proprietary algorithm (formula) along with associated links to

each Web site in the "hit" list, and other links and information created or supplied by the site's sponsor. Using the "skiing" example, a typical search result page will provide, among other things, a computer generated list of, and links to, Web sites, many of which are likely to contain information about skiing. The associated links in the list are sometimes referred to as "search engine hits."

25. Web Sites are constructed for location and searching through use of Internet search engines and Web browser technologies.

26. The French Web Sites include several metatags chosen by Defendants to attract persons conducting on-line searches in connection with real estate information and opportunities (collectively, the "French Metatags").

27. The French Metatags for the Web Sites of the French Agents, and Defendant O'Connor, include at the least the term SANTA FE PROPERTIES®, a registered federal service mark owned exclusively by Santa Fe Properties. Other Santa Fe Properties' Marks also are utilized among the sites.

28. The unauthorized metatags on the French Web Sites are provided and written by French & French under the direction of the Qualifying Broker, and include at least the following: French Agent and Defendant Robert O'Connor, whose Web address is www.prestigesantafeproperties.com, and French Agents, Bob Burbic, whose Web address is www.bobburbic.com, Kevin Bobolsky, whose Web address is www.chamariverranch.com, Fred Raznick, whose Web address is www.fredraznick.com, Paul McDonald, whose Web address is www.homesantafe.com, Dwight Hume, whose Web address is www.humeandhume.com, Liz Sheffield, whose Web address is www.lizsheffield.com, Webb Sherrill, whose Web address is www.webbsherill.com, Gary Wallace and Jeff Welch, whose Web address is

www.weselleldorado.com, Jennifer Harris, whose Web address is www.lamesita.com, and Ray

Rush and Tim Van Camp, whose Web address is www.santafeluxuryrealestate.com.

29.     Since Santa Fe Properties' corporate beginnings decades ago, Santa Fe Properties

has become recognized as a leader in its industry.  The public has come to strongly associate the

Santa Fe Properties' Marks with Santa Fe Properties' unique and high quality brand of goods and

services.  Santa Fe Properties derives revenue from the use of the Santa Fe Properties' Marks in

conjunction with the sale of real estate and real properties in New Mexico.

30.     To protect the valuable association of the Santa Fe Properties' Marks, Santa Fe

Properties registered the marks with the United States Patent and Trademark Office for a variety

of goods and services.  Santa Fe Properties is the sole owner of all rights, title and interests in

and to the Santa Fe Properties' Marks and has not licensed or otherwise authorized their use in

any manner.

31.     For many years, Santa Fe Properties' marketing and promotion of the Santa Fe

Properties' Marks through various media formats has served to reinforce the strength of the

Santa Fe Properties' Marks, which are inherently distinctive or have acquired strong secondary

meaning.

### The Internet

32.     The Internet is a global network of interconnected computers, allowing users to

communicate and share information with one another.  Each computer in a network (the physical

interconnection of computers) is connected to the other computers via telephone lines, cable

wires, satellites and other digital and analog communication media, permitting computer-users

on the network to instantaneously transmit computer files to other computer-users, regardless of

location.  The computers and computer networks that make up the Internet are located around the

world, and are owned by governmental entities, educational institutions, business entities, non-profit organizations, and individuals.

## The World Wide Web

33.     People search for and retrieve information located on remote computers on the Internet using various methods, the most popular of which is through accessing the World Wide Web, or Web.   The Web is a collection of informational resources contained in documents located on computers around the world.   It is the most well-known and highly used method by which individual computer-users can access resources available on the computers that make up the Internet.

34.     Each Web site has a unique address called a "universal resource locator" ("URL"), also referred to as a "domain address" which is similar in function to a telephone number, allowing each address to be located and accessed by computer-users.  Domain names comprise a "top level domain" at the end of the address, such as the well-known ".com", ".org", ".edu", ".gov", and ".net" which correspond, respectively, to commercial, organizational, educational, government, and network provider sites.  The "second level domain" comprises the more site-specific identifier, such as "uspto" for the United States Patent and Trademark Office (typically referred to as the "USPTO").  Together with the "www" reference, these comprise the URL, for example, "www.uspto.gov".

35.     Anyone may make information available to the public on the Web by putting the information on a computer connected a Web server.  Businesses now have Web sites that offer information about products or services offered.

36.     A Web site often is composed of numerous separate "pages," each containing different information relevant to the Web site as a whole.

37.     One measure of the popularity of a Web site is the number of "visits" to the Web site.  A "visit" is a measure of an Internet user accessing one or more pages of a particular Web site.  Each time any page of a Web site is viewed, it is a "page view."  Each time an advertisement on any page of a Web site is displayed, it is an "impression."  Thus, a single user may generate one visit, one or more page views, and one or more impressions.

38.     To generate revenue to a business from Web sites, a Web site publisher seeks to make its Web site interesting, informative, useful, and generally attractive to Internet users.

### Santa Fe Properties' Web Presence

39.     As communications technology and electronic publishing techniques advanced, Santa Fe Properties recognized the potential of the Internet as a means for reaching millions of consumers in an intimate and personalized media that had not before been available.  Santa Fe Properties has expended significant resources and efforts to develop Web sites to provide global consumers instant access to Santa Fe Properties features.  Presently, Santa Fe Properties maintains a Web site on the World Wide Web at www.santafeproperties.com ("Santa Fe Properties Web Site").

### Defendants' Wrongful Conduct

40.     As detailed herein, Defendants have hijacked and usurped Santa Fe Properties' good will and reputation by exploiting searches based on the Santa Fe Properties' Marks.  Such use of Santa Fe Properties' Marks confuses and lures away prospective customers of Santa Fe Properties.

41.     French & French, through its Qualifying Broker, has maintained its own Web site utilizing the registered marks of Santa Fe Properties as metatags.  French & French, through its Qualifying Broker, has additionally provided and presently provides the French Agents,

including French Agent Defendant O'Connor, with the ability and means to employ the registered marks of Santa Fe Properties by using and providing metatags for the French Agents' Web sites (collectively, "Infringing Web Sites").

42.     The unauthorized use of the Santa Fe Properties' Marks has occurred with French & French's use of metatags on its own Web site utilizing the Santa Fe Properties' Marks. Additionally, unauthorized use has occurred and continues to occur when the metatags provided to the Infringing Web Sites of the French Agents utilize the Santa Fe Properties' Marks. This, in turn, results in search results returned by search engines which include the Infringing Web Sites in their search results list in response to search terms employing Santa Fe Properties' Marks, a result that is confusing to consumers.

43.     Because of the unauthorized use and exploitation of the Santa Fe Properties' Marks by Defendants, and in the interests of judicial economy and in hopes of avoiding the expense that litigation entails, Plaintiff's attorney sent a letter to French & French on September 13, 2003, a copy of which is attached as **Exhibit C** ("Cease and Desist Letter"). The letter requests cessation of French & French's unauthorized practice of using the Santa Fe Properties' Marks on French & French Web sites.

44.     On September 23, 2003, counsel for French & French responded to the Cease and Desist Letter as recited in the letter attached as **Exhibit D** ("Response Letter"). Although the Response Letter reflects incorrect application of both the facts and law in connection with the Santa Fe Properties' Marks, one thing is clear: French & French promised to cease and desist using the registered marks of Plaintiff as metatags.

45.     Rather than cease using the registered marks of Plaintiff as metatags as promised in the Response Letter, the Qualifying Broker and French & French merely ceased using the

Santa Fe Properties' Marks on Web sites controlled exclusively by French & French, and willfully inserted the metatags on a number of Web sites for associate brokers and sales persons, including the French Agents.

46.     Plaintiff allowed a reasonable time for cessation of the unauthorized use of the Santa Fe Properties' Marks. Review of the Web Sites, however, shows that the French Agents did not, and have not, ceased and desisted from use of valuable Santa Fe Properties' Marks as metatags. Documents showing metatags used by the French Agents are attached as **Exhibit B**. Those documents expressly confirm that the unauthorized metatags are "metas written by French & French." As of May 7, 2004, the Qualifying Broker, acting on behalf of French & French, continued unauthorized use of metatags on the French Agent Web Sites.

<u>FIRST CLAIM FOR RELIEF</u>

(Enforcement of Agreement Not to Infringe)

47.     Santa Fe Properties repeats and realleges paragraphs 1 through 46.

48.     On September 23, 2003 counsel for French & French responded to the Cease and Desist Letter as recited in the Response Letter attached as **Exhibit D**.

49.     Acting by and through counsel, French & French promised to cease and desist using the registered marks of Plaintiff as metatags.

50.     In reliance on the promises, Plaintiff did not pursue other remedies available to Plaintiff.

51.     French & French failed and refused to cease and desist from infringing the marks of Plaintiff.

52.     The Court therefore should enforce the agreement of French & French to cease and desist from infringing the registered marks of Plaintiff.

53.     By reason of Defendants' alleged conduct, Santa Fe Properties is suffering and will continue to suffer irreparable damage and, unless Defendants are enjoined from continuing their wrongful acts, damages to Santa Fe Properties will continue unhindered.

54.     The Court should issue a temporary restraining order and final injunctive relief against French & French, and anyone acting through or under French & French, compelling enforcement of the agreement not to infringe the marks of Plaintiff.  In addition to a temporary restraining order and an injunction, Santa Fe Properties also requests profits, damages and costs, as provided by law, including treble damages and attorneys' fees, in an amount to be determined at trial.

SECOND CLAIM FOR RELIEF

(Trademark Infringement Under Section 32(1)
of the Lanham Act, 15 U.S.C. Section 1114(1))

55.     Santa Fe Properties repeats and realleges paragraphs 1 through 54.

56.     Santa Fe Properties owns and has registered the Santa Fe Properties' Marks on the Principal Register of the United States Patent and Trademark Office.

57.     By virtue of registration with the United States Patent and Trademark Office, Santa Fe Properties' Marks are entitled to protection under the United States Trademark Act. 15 U.S.C. §§1051, *et seq.*

58.     As described above, Defendants have designed an advertising scheme that targets and confuses Internet users who search for at least the term SANTA FE PROPERTIES®.

59.     Defendants have not been licensed or otherwise authorized by Santa Fe Properties to use the Santa Fe Properties' Marks in any way.

60.     The acts of Defendants complained of, including, *inter alia*, the French Agents' unauthorized use of the Santa Fe Properties' Marks, constitute willful infringement, contributory

infringement and vicarious infringement of Santa Fe Properties' registered Santa Fe Properties' Marks, in violation of Section 32(1) of the Lanham Act, 15 U.S.C. §1114(1).

61.     On information and belief, the aforesaid acts, by which Defendants are profiting, were undertaken willfully and with the intention of causing consumer confusion, mistake or deception as to the source, sponsorship by or affiliation with the Santa Fe Properties' Marks.

62.     By reason of Defendants' alleged conduct, Santa Fe Properties is suffering and will continue to suffer irreparable damage and, unless the Defendants are enjoined from continuing their wrongful acts, damages to Santa Fe Properties will continue unhindered.

63.     In addition to a temporary restraining order and an injunction, Santa Fe Properties also requests profits, damages and costs, as provided by law, including treble damages and attorneys' fees, in an amount to be determined at trial.

THIRD CLAIM FOR RELIEF

(Contributory Infringement and Inducement of Infringement
under §32(1), Lanham Act, 15 U.S.C. §1114(1))

64.     Santa Fe Properties repeats and realleges paragraphs 1 through 63.

65.     The Qualifying Broker, acting on behalf of French & French, authored, authorized and sponsored the Unauthorized Metatags on the Web sites of at least the French Agents listed in **Exhibit E**.

66.     The Qualifying Broker, acting on behalf of French & French, therefore contributed to infringement of the Santa Fe Properties' Marks by the French Agents.

67.     The Qualifying Broker, acting on behalf of French & French, devised and implemented a plan for continuing to infringe indirectly the Santa Fe Properties' Marks.

68.     The plan for indirect infringement, undertaken knowingly and intentionally by the Qualifying Broker, acting on behalf of French & French, is an attempt to circumvent the

agreement of French & French to cease and desist from infringement of the Santa Fe Properties' Marks.

69.   The acts of the Qualifying Broker, acting on behalf of French & French, contributed to infringement of the Santa Fe Properties' Marks by the French Agents.

70.   The acts of the Qualifying Broker, acting on behalf of French & French, were intended to mislead and confuse the consuming public to believe that the services of the Associate Brokers and Agents were connected to or performed on behalf of Santa Fe Properties.

71.   The acts of the Qualifying Broker, acting on behalf of French & French, were acts knowingly undertaken to induce the French Agents to infringe the Santa Fe Properties' Marks.

## FOURTH CLAIM FOR RELIEF

### (Common Law Trademark Infringement)

72.   Santa Fe Properties repeats and realleges paragraphs 1 through 71.

73.   The acts of Defendants constitute trademark infringement under the statutory and common law of the State of New Mexico.

74.   In addition to the federally registered trademarks owned exclusively by Santa Fe Properties and attached as **Exhibits A1-A5**, Plaintiff has used in commerce the following marks: SANTA FE LIVING, OFFERING THE BEST OF SANTA FE, and SANTA FE SELECT. While those marks also are registered on the Principal Register of the United States Patent and Trademark Office, Plaintiff asserts at this time only a common law right in those marks arising under the laws of the State of New Mexico ("Common Law Marks").

75.   On information and belief, Defendants have acted willfully and with the intention and likely result of confusing, misleading, and deceiving consumers, and have intentionally and

Complaint for Infringement                    15

willfully misappropriated the good will belonging to Santa Fe Properties in its Common Law Marks, services, and products.

76.     The acts of Defendants, including, *inter alia*, unauthorized uses of the Common Law Marks, constitute willful infringement, contributory infringement and vicarious infringement of Santa Fe Properties' Common Law Marks in violation of New Mexico statutory and common law.

77.     By reason of Defendants' conduct, Santa Fe Properties is suffering and will continue to suffer irreparable damage and, unless Defendants are enjoined form continuing these wrongful acts, the damage to Santa Fe Properties will increase.

78.     In addition to a temporary restraining order and injunction, Santa Fe Properties requests profits, damages and costs, as provided by law.

FIFTH CLAIM FOR RELIEF

(False Designation of Origin, False Advertising, and Unfair Competition Under<br>Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a))

79.     Santa Fe Properties repeats and realleges paragraphs 1 through 78.

80.     The unauthorized acts of Defendants constitute false designations of origin and unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a).

81.     The Qualifying Broker and French & French promised to cease and desist from use of the marks owned by Santa Fe Properties, but failed and refused to do so (*see* **Exhibits D and E**).

82.     Defendants acted with the intention of causing confusion, mistake or deception, and of misappropriating the good will associated with the marks owned by Santa Fe Properties to profit thereby to the detriment of Santa Fe Properties.

83.     By reason of Defendants' unfair competition, inducement of others to compete unfairly, and continued unauthorized use of marks owned by Santa Fe Properties in a manner that aids others to compete unfairly with Santa Fe Properties, Santa Fe Properties is suffering and will continue to suffer irreparable damage and, unless Defendants are enjoined from continuing these wrongful acts, the damage to Santa Fe Properties will persist and increase.

84.     In addition to an injunction, Santa Fe Properties requests profits, damages and costs, as provided by law, including treble damages and attorneys' fees, in an amount to be determined at trial.

## SIXTH CLAIM FOR RELIEF

### (Trademark Infringement Under New Mexico Statutes)

85.     Santa Fe Properties repeats and realleges paragraphs 1 through 84.

86.     Santa Fe Properties owns and has registered certain of the Santa Fe Properties' Marks on the trademark register of the State of New Mexico.   Copies of the New Mexico registrations are attached collectively as **Exhibit F** ("State Marks").

87.     By virtue of registration with the State of New Mexico, the State Marks are entitled to protection under NMSA 1978, §§ 57-3B-1, *et seq.*

88.     The acts of Defendants, including *inter alia*, the French Agents' unauthorized uses of marks owned by Santa Fe Properties, constitute willful infringement, contributory infringement and vicarious infringement of the State Marks, in violation of NMSA 1978, § 57-3B-1, *et seq.*

89.     By reason of the acts of Defendants, Santa Fe Properties is suffering and will continue to suffer irreparable damage and, unless Defendants are enjoined from continuing their wrongful acts, the damage to Santa Fe Properties will persist and increase.

90.     In addition to a temporary restraining order and an injunction, Santa Fe Properties requests profits and damages, including treble damages, as provided by law, in an amount to be determined at trial.

SEVENTH CLAIM FOR RELIEF

(Trademark Infringement Involving Domain Names)

91.     Santa Fe Properties repeats and realleges paragraphs 1 through 90.

92.     Santa Fe Properties is the owner of the following registered domain names: www.santafeproperties.com,     www.santafeproperties.net,     and     www.santafeproperties.org (collectively, "Santa Fe Properties' Domain Names").

93.     Defendant     Robert     O'Connor     is     using     as     a     domain     name www.prestigesantafeproperties.com.

94.     Defendant O'Connor's use of the domain name identified above ("Infringing Domain Name") infringes the Santa Fe Properties' Marks.

95.     Plaintiff has neither authorized nor licensed use of the Santa Fe Properties' Marks in connection with on any domain name owned by Defendant O'Connor.

96.     By reason of Defendants' alleged conduct, Santa Fe Properties is suffering and will continue to suffer irreparable damage and, unless the Defendants are enjoined from continuing their wrongful acts, damages to Santa Fe Properties will continue unhindered.   In addition to injunctive relief, the Court should order Defendant O'Connor to relinquish and cancel the Infringing Domain Names, or to transfer the Infringing Domain Name to Plaintiff.

## EIGHTH CLAIM FOR RELIEF

### (Unfair Competition Under NMSA §§59A-16-3, *et seq.*)

97.　　Santa Fe Properties repeats and realleges paragraphs 1 through 96.

98.　　Defendants have engaged in unfair competition, induced others to engage in and have aided, with full knowledge, others in engaging in unfair and deceptive business practices, in violation of NMSA §§59A-16-3, *et seq.*

99.　　By reason of the aforementioned acts of Defendants, including deceptive advertising and other unauthorized uses of marks owned by Santa Fe Properties in a manner likely to result in confusion to consumers, Santa Fe Properties is suffering and will continue to suffer irreparable damage and, unless Defendants are enjoined from continuing these wrongful acts, the damage to Santa Fe Properties will persist and increase.

100.　Santa Fe Properties has no adequate remedy at law.

## NINTH CLAIM FOR RELIEF

### (False and Misleading Advertising in Violation of NMSA 1978, §16-21-11, *et seq.*)

101.　Santa Fe Properties repeats and realleges paragraphs 1 through 100.

102.　On information and belief, Defendants have designed their Web pages to falsely mislead consumers in violation of NMSA §§16-21-11, *et seq.*

103.　By reason of Defendants' alleged conducts, Santa Fe Properties is suffering and will continue to suffer irreparable damage and, unless Defendants are enjoined from continuing these wrongful acts, the damage to Santa Fe Properties will persist and increase.

104.　In addition to an injunction, Santa Fe Properties requests profits, damages and costs, as provided by law.

## TENTH CLAIM FOR RELIEF

### (Common Law Unfair Competition)

105.    Santa Fe Properties repeats and realleges paragraphs 1 through 104.

106.    The acts of Defendants constitute unfair competition, inducement of unfair competition, and aiding, with full knowledge, unfair competition under the common law of the State of New Mexico.

107.    By reason of such acts by Defendants, Santa Fe Properties is suffering and will continue to suffer irreparable damage and, unless French Agents are enjoined from continuing these wrongful acts, the damage to Santa Fe Properties will persist and increase.

108.    In addition to an injunction, Santa Fe Properties requests profits, damages and costs, as provided by law.

## ELEVENTH CLAIM FOR RELIEF

### (Unjust Enrichment/Quantum Meruit)

109.    Santa Fe Properties repeats and realleges paragraphs 1 through 108.

110.    Defendants have engaged in the intentional, calculated and unlawful conduct described herein for the purpose of depriving Santa Fe Properties, both now and in the future, of revenues or profits to which Santa Fe Properties is entitled by virtue of the marks owned by Santa Fe Properties.   Defendants are, upon information and belief, intentionally diverting consumers and profiting thereby.

111.    As a result, Defendants have been and may continue to be unjustly enriched, to Santa Fe Properties' detriment.

112.    In addition to a temporary restraining order and an injunction, Santa Fe Properties requests profits, damages and costs, as provided by law.

## PRAYER FOR RELIEF

WHEREFORE, Santa Fe Properties prays for judgment against Defendants as follows:

A.      That the Defendants, their officers, agents, servants, employees, licensees, attorneys, subsidiaries, related companies and all persons acting for, with, by, through or under them, and each of them, be restrained and enjoined during the pendency of this action and permanently thereafter, from:

1.      advertising, promoting, distributing, offering for sale, selling or using in any manner the Santa Fe Properties' Marks and Common Law Marks in connection with advertisements or directories, both conventional and electronic, that dilute or are likely to cause confusion with the Santa Fe Properties' Marks;

2.      advertising, promoting, distributing, offering for sale, selling or using any metatag, other tag, device, method, program, or algorithm in a manner likely to dilute or cause confusion with the Santa Fe Properties' Marks and Common Law Marks;

3.      misrepresenting or suggesting sponsorship or affiliation of third party products and services by use of the Santa Fe Properties' Marks and Common Law Marks without authorization or approval by Santa Fe Properties; and

4.      doing any other act calculated to trade on the good will of the Santa Fe Properties' Marks and Common Law Marks, to cause confusion or mistake in the mind of the public, or to deceive consumers into mistakenly believing that Defendants, individually or by and through any of their agents, including French Agents, or their agents, customers, or clients are authorized, sponsored by, or in any way affiliated, connected or associated with Santa Fe Properties or Santa Fe Properties' businesses or services;

B.      That the Defendants file with the Court and serve upon Santa Fe Properties' counsel no later than thirty (30) days after entry of Judgment, an affidavit setting forth in detail the manner and form in which French Agents have complied with the requirements of the Injunction and Order;

C.      That the Defendants pay to Santa Fe Properties (a) all gains, profits or advantages derived by French Agents from the violations of Santa Fe Properties' rights, (b) such damages as Santa Fe Properties has sustained in consequence of such violations, (c) statutory damages for willful infringement or such other amounts as may be just and proper, and (d) treble damages for such willful infringement;

D.      That the Defendants pay to Santa Fe Properties such punitive damages as may be permitted by law;

E.      That Defendant O'Connor be ordered either to relinquish the infringing domain name www.prestigesantafeproperties.com, or transfer the infringing domain name to Plaintiff;

F.      That Defendant O'Connor be ordered to cease doing business as "Prestige Santa Fe Properties";

G.      That the Court award Santa Fe Properties its attorneys' fees and costs incurred in this action;

H.      That the court require French & French and any associated Web sites of French & French, including those of French Agents to post prominently at the beginning of any real estate related Web site the following:

> IF YOU WERE DIRECTED TO THIS WEB SITE
> USING THE TERMS "SANTA FE PROPERTIES,"
> "THE SIGN OF REAL ESTATE IN SANTA FE,"
> "SANTA FE LIVING," "SANTA FE SELECT,"

OR "OFFERING THE BEST OF SANTA FE LIVING,"
THAT IS IN ERROR BECAUSE THOSE TERMS.
ARE REGISTERED SERVICE MARKS
OF SANTA FE PROPERTIES, INC.
WHOSE WEB SITE IS AT WWW.SANTAFEPROPERTIES.COM.

and;

l.      That the Court award to Santa Fe Properties such other and further relief

as the Court deems just and proper.

Dated: the _12th_ day of May, 2004

LAW OFFICE OF RAY R. REGAN, P. A.

By: _____

Ray R. Regan, Esq.
LAW OFFICE OF RAY R. REGAN, P.A.
P.O. Box 1442, Corrales, New Mexico 87048
Telephone:  (505) 897-7200
Facsimile:   (505) 897-7201

and

Katy C. Fain, Esq.
MAYS & FAIN, LLP
6700-B Jefferson St., NE
Suite 18
Albuquerque, New Mexico  87109
Telephone:  (505) 468-0518
Facsimile:   (505) 468-0558

**EXHIBIT A-1**
(Santa Fe Properties Mark)

**THE EXHIBITS ATTACHED TO THIS PLEADING ARE TOO VOLUMINOUS TO SCAN.  SAID EXHIBITS ARE ATTACHED TO THE ORIGINAL PLEADING IN THE CASE FILE WHICH IS LOCATED IN THE RECORDS DEPARTMENT, U.S. DISTRICT COURT CLERK'S OFFICE...**