IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

FILED
UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

SANTA FE PROPERTIES, INC.,
a New Mexico corporation,

Plaintiff,

v.

Case No. CIV-04-0518 JB/DJS

05 APR 18 PM 2:28

CLERK-ALBUQUERQUE

FRENCH & FRENCH FINE
PROPERTIES, INC., MICHAEL
FRENCH, qualifying broker for
French & French Fine Properties,
Inc., and ROBERT O'CONNOR,

Defendants.

## DEFENDANTS OPPOSITION TO PLAINTIFF'S
## MOTION FOR ORDER TO SHOW CAUSE

This Opposition is filed by counsel, Peacock Myers & Adams, PC, for French & French

Fine Properties, Inc. (hereinafter "French & French") and Michael French.

Plaintiff Santa Fe Properties, Inc. ("Santa Fe Properties") has filed a motion for an order

to show cause why Defendants French & French and Michael French (collectively, Defendants)

should not be held in contempt of this Court in breach of a stipulated order and judgment for

permanent injunction prohibiting them from using two trademarks owned by Santa Fe Properties.

Defendants French & French and Michael French categorically deny that they have violated the

prohibition in the injunction.  The language of the injunction has been seriously distorted in an

overreaching attempt to establish the prohibition as breached.  Plaintiff does not allege any actual

confusion arising from the use by two of Defendants' agents of the domain name

www.santafefinerproperties.com.  This motion has been brought in order to harass and unfairly

compete with Defendants French & French and Michael French in the field of real estate

brokerage in the vicinity of Santa Fe, New Mexico.

## I.    BACKGROUND

### A.    The Earlier Litigation

In May 2004, Santa Fe Properties filed a Complaint for trademark infringement to prevent use of certain metatags that allegedly infringed on trademarks owned by Santa Fe Properties.[1] Santa Fe Properties alleged infringement of five registered trademarks four of which included the city name, Santa Fe.  In the Stipulated Order and Judgment for Permanent Injunction ("Injunction"), only two of the trademarks were identified, namely, SANTA FE PROPERTIES and SANTA FE LIVING.  Therefore, only two of the five marks are at issue in this motion.  The portion of the Injunction at issue in this motion is set forth, in pertinent part, in Paragraph 2, Exhibit A to Plaintiff's motion.

The principal issue before the Court is interpretation and application of the Injunction.

### B.    Context for Interpretation of the Injunction

Although the primary issue in this motion is the meaning of the terms of the Injunction, the language requires the context of the trademark registration procedures including the legal requirements for a mark comprised of highly descriptive words including a city-name.

    1.    Marks that Describe the Services with Which the Mark Is Used Are Not
          Ordinarily Registrable

In obtaining the mark SANTA FE PROPERTIES, the United States Patent and Trademark Office ("USPTO") required Plaintiff-Registrant to state: "No claim is made to the

---

[1] The suit also alleged trademark infringement by one of Defendants' agents, Robert O'Connor, for use of the domain name, "prestigesantafeproperties".  That use was discontinued and Plaintiff does not allege any violation of that portion of the injunction.

exclusive right to use 'properties', apart from the mark as shown."[2]  This statement is referred to

as a disclaimer and is a concession that the registrant does not claim any rights to the word

"properties" except as part of the entire mark.  The reason that a disclaimer is required is because

a mark that is merely descriptive of the goods or services to which it relates cannot be registered

under § 2(e)(1), like a mark that is fanciful, arbitrary or suggestive.  15 U.S.C. § 1052(e)(1).  A

mark is considered merely descriptive if it describes an ingredient, quality, characteristic,

function, feature, purpose or use of the specified goods or services.  In re Gyulah, 820 F.2d 1216

(Fed. Cir. 1987).  Whether a term is descriptive requires consideration of the goods or services

with which it is used and the context as well as the significance that the mark would have on the

average purchaser of the services in the marketplace.  In re Omaha National Corp., 819 F.2d

1117 (Fed. Cir. 1987).  Thus, a word like "properties" if used alone, in connection with the

provision of real estate services, could not be registered under § 2(e)(1).  The obvious rationale

for such a rule is that allowing one provider of services the exclusive right to the use of a

descriptive word would prohibit all competitors from using that word which is necessary to

advertise and market the competitor's services.  That is, it is anti-competitive.

However, a word that is merely descriptive and not registrable under § 2(e)(1) may be

registrable under § 2(f), if it has acquired distinctiveness or secondary meaning.  15 U.S.C. §

1052(f).  In such event, an applicant must meet a *prima facie* case of distinctiveness by "proof of

substantially exclusive and continuous use thereof as a mark by the applicant in commerce for

the five years before the date on which the claim of distinctiveness is made."  As stated in Two

---

[2] The services for Registration No. 2,383,332 were "real estate services, namely, brokerage, appraisals, management, listing of real properties, and leasing of real properties."

Page -3-

Pesos, Inc. v. Taco Cabana, Inc., 505 U.S. 763, 112 S.Ct. 2753, 2757 (1992):

> Marks which are merely descriptive of a product are not inherently
>
> distinctive.  When used to describe a product, they do not
>
> inherently identify a particular source, and hence cannot be
>
> protected.  However, descriptive marks may acquire the
>
> distinctiveness which will allow them to be protected under the
>
> [Lanham] Act . . .  This acquired distinctiveness is generally called
>
> "secondary meaning".

In other words, if a real estate broker attempted to register the word "properties" on the grounds

that it was not merely a description of the services offered but because of long and exclusive

usage had come to be considered by purchasers as a source for real estate brokerage services

from the broker, it could be registered.  That hypothetical, of course, is improbable.

### 2.  Marks that are Primarily Geographically Descriptive
### Are Not Ordinarily Registrable

Plaintiff-registrant's mark did not include merely the word "properties" but was

juxtaposed with the name of a geographic location, namely, Santa Fe.  However, the USPTO has

a similar prohibition against registering a mark that is "primarily geographically descriptive".

§ 2(e)(2).  The name of a city is a geographic location and if those words -- Santa Fe -- are

primarily geographic, that is, that the primary significance is that of a geographic location, then it

cannot be registered under § 2(e)(2).  In re Wada, 194 F.3d 1297 (Fed. Cir. 1999) (Primary

significance of New York held to be geographic.).  In addition to primary significance, if

purchasers would be likely to associate the services with the place, that is, to think that the goods

Page -4-

or services originated in the geographic location identified in the mark, then it is geographically descriptive.

In registering a mark with the USPTO, if the primary significance of the mark is a geographic place, that is neither obscure nor remote, an association between the services and a place is presumed. In re JT Tobacconists, 59 USPQ2d 1080 (TTAB 2001) (MINNESOTA CIGAR COMPANY primarily geographically descriptive of cigars.) In order to register a mark whose primary significance is a location and for which there is a presumption that purchasers will associate the services with the location, the USPTO also inquires as to whether the services do in fact originate from that geographic location. Registrant, Santa Fe Properties, identified its offices at 1000 Paseo de Peralta, Santa Fe, New Mexico 87501 in the registration of Plaintiff, as the origination of the services. Thus, "Santa Fe', could not be registered under § 2(e)(2).

Like descriptive marks, a geographic mark can be registered under § 2(f) even if the mark is primarily geographically descriptive of the services. The criteria for registering under § 2(f) are the same as discussed above with respect to descriptive marks.

### 3.    Marks Combining Two Words That Are Descriptive Are Not Ordinarily Registrable

SANTA FE PROPERTIES is a composite mark comprising a primarily geographically descriptive word and a word that is descriptive of the services for which the mark was registered. In such case, the mark must be considered as a composite and the determination of whether the mark, as a whole, is merely descriptive and/or primarily geographically descriptive is presented. For a composite mark, a determination may be made as to whether the geographic term is a separable element of the mark and to then evaluate the nature of the additional word that makes

up the mark. In that instance, the USPTO will require that the separable component that is primarily geographically descriptive be disclaimed. However, in the mark SANTA FE PROPERTIES, there was no requirement for disclaimer of the city name, Santa Fe. The reason is that a composite mark cannot be registered if all of the components of the mark have been disclaimed and the Patent Office had already made a determination that the word "properties" was descriptive. (Exhibit 1) In Denna Corp. v. Belvedere Int'l., Inc.., 950 F.2d 1555, 1560 (Fed. Cir. 1991).

In summary, the mark that Plaintiff relied upon in the earlier proceeding that was of concern to the Defendants, SANTA FE PROPERTIES, was an extremely weak mark. Defendants concluded that the mark should not have been registered by the USPTO. Nevertheless, in order to find a peaceable solution without the expenditure of litigation fees that would far exceed the value to Defendants of the use of the metatags, Defendants French & French and Michael French entered into the stipulated judgment.

## C.     The Basis for the Injunction

As noted immediately above, Defendants French & French and Michael French were not accused of trademark infringement based on advertising materials, marketing brochures, or use of the allegedly offending marks on the Internet. The basis for the claim against French & French and Michael French was that they were utilizing in the metatags the city name "Santa Fe" and the word "properties". There was no proof offered nor even an allegation made that the metatags used by French & French and its authorized agents in their domain names caused search engines to identify French & French or any of its agents as the source of real estate services in Santa Fe when one entered the search phrase "Santa Fe Properties". That is, there was no evidence of

actual initial confusion.

Thus, an appropriate basis for a non-litigated resolution of the dispute involved several considerations. Obviously, Defendants had the right to use the city name, Santa Fe, in any manner they wished other than with the word "properties". Conversely, Defendants had the complete right to use the word "properties" so long as it was not juxtaposed with the city-name, Santa Fe. Furthermore, if the city-name and the word "properties" were used in conjunction, it was agreeable that they would not be used as a trademark but rather could be used only as descriptive of the location from which the services originated and the types of services offered. The resulting language states:

> ". . . nothing shall preclude Defendants from using the words 'Santa Fe' or
> 'properties' (lower case letters), or 'living' (lower case letters), but not in
> juxtaposition, and only in descriptive text."

The quoted phrase from the Injunction was designed to prohibit metatag usage of the three words but only if they were used in the precise sequence and manner of the trademark. That was the purpose of the word "juxtaposition" in the Injunction.

## II.    DEFENDANTS HAVE NOT VIOLATED THE STIPULATED INJUNCTION

The sole basis of the motion for holding Defendants in contempt is the usage by two of French & French agents of the domain name www.santafefinerproperties.com. As required by the stipulated injunction, all the words in the accused domain name are in lower case letters and thus do not violate that phrase of the injunction. As will be immediately apparent, the city name, Santa Fe, and the descriptive word of the subject matter of the service offered by the French & French agents is separated by the word "finer". Plaintiff attempts to minimize that fact by stating

that the words "santafe" and "properties" are separated "solely" by the word finer.
(Memorandum, p. 2, point 5) Plaintiff's argument is that the injunction has been violated
because there is "juxtaposition" of the words "santafe" and "properties" even though there is a
word separating the city name and the descriptive word.

Plaintiff's definition from the Random House Dictionary of the English Language, a page
of which was attached as Exhibit C to the brief in support of the motion, defines juxtaposition as
"a placing close together or side-by-side, esp. for comparison or contrast", or as an alternative
definition, "the situation of being close together or side-by-side." When that definition is
considered as a whole, it is clear that two words, or two objects, or two of anything, are not
juxtaposed if there is another word, object, or thing between the two words. It is apparent that
Plaintiff is overreaching in attempting to distort the word "juxtaposition" so as to cover the
domain name of the French & French agents where the word "finer" clearly separates the city
name "santafe" and "properties". That distinction may appear minor, but it is significant because
the injunction language was precise -- to prevent a certain type of metatag usage -- and because
the mark is extremely weak deserving of narrow protection, if any.

Plaintiff does not advance an argument that the third element of the exception to the
prohibition of the injunction -- "only in descriptive text" is violated. The domain name
"santafefinerproperties" clearly is descriptive of the website used by the two agents of French &
French. The website name as a whole "www.santafefinerpropreties.com" is descriptive text. It is
not understood that Plaintiff argues to the contrary.

In summary, Plaintiff has chosen an extremely weak mark comprising the location from
which its services are performed which is a city with widespread recognition in the United States

as well as internationally. Plaintiff then selected one of the most descriptive, if not generic, words that is used to describe the "products" for which real estate brokerage services are offered. By attempting to capture both the location -- absolutely required by any firm providing real estate brokerage services in the Santa Fe area -- and one of the most common descriptive words of such services, Plaintiff is using the mark as an anti-competitive tool. That is apparent from the narrowness of the injunction compared to typical injunctions in trademark dispute resolutions. Plaintiff now attempts to twist and turn the injunction language so as to increase the scope of protection notwithstanding the weakness of its trademark. In short, the trademark should never have been issued by the USPTO.

III.  **DEFENDANT FRENCH & FRENCH HAS FILED A PETITION TO CANCEL THE TRADEMARK "SANTA FE PROPERTIES" IN THE USPTO**

Due to the excessive overreaching and harassment of Plaintiff in bringing this motion, Defendant French & French has been compelled to institute a proceeding in the USPTO to cancel the registration SANTA FE PROPERTIES. A copy of that Petition is attached to this Opposition as Exhibit 2. Regardless of the resolution of the motion presently before the Court, Defendant French & French informs the Court that upon the conclusion of the cancellation proceeding in the USPTO in favor of cancellation of Plaintiff's mark, SANTA FE PROPERTIES, Defendant will bring a motion before this Court to dissolve the injunction in its entirety.

IV.  **SUMMARY**

It is respectfully submitted that the Motion for an Order to Show Cause why French & French and Michael French should not be held in contempt should be denied. The stipulated

Case 1:04-cv-00518-JB-DJS   Document 11   Filed 04/18/05   Page 10 of 22


injunction when properly interpreted has not been violated by Defendants. It is requested that the Court in denying the motion construe the term "juxtaposition" so as to make it clear that it applies solely to the use of the city name Santa Fe next to the word "properties" <u>without any intervening word</u>.

If the construction of the language of the stipulated injunction requires a formal order of the Court to alter the language of the injunction in the manner set forth immediately above, Defendants French & French and Michael French give notice that they will file the appropriate motion for amendment or modification of the judgment.

Dated this 18th day of April, 2005.

PEACOCK MYERS & ADAMS, PC

By_____
Paul Adams
201 Third Street, Suite 1340
Albuquerque, NM 87102
(505) 998-1500
(505) 242-2542 facsimile
padams@peacocklaw.com

Attorneys for Defendants

## CERTIFICATE OF SERVICE

The undersigned certifies that true and correct copy of the foregoing pleading was sent via facsimile and United States first class mail this 18th day of April, 2005 to Ray R. Regan, P.O. Box 1442, Corrales, New Mexico 87048.

_____
Paul Adams

# UNITED STATES DEPARTMENT OF COMMERCE
## Patent and Trademark Office

| | |
|---|---|
| **SERIAL NO.**          **APPLICANT**<br>75/586198 Santa Fe Properties, Inc.<br>**MARK**<br>SANTA FE PROPERTIES<br>**ADDRESS**<br>RAY R. REGAN<br>LAW OFFICE OF RAY R. REGAN<br>P.O. BOX 1442<br>CORRALES, NEW MEXICO 87048 | **PAPER NO.** |

| | |
|---|---|
| **ACTION NO.**<br>01 | **ADDRESS:**<br>Assistant Commissioner<br>for Trademarks<br>2900 Crystal Drive<br>Arlington, VA 22202-3513 |
| **MAILING DATE**<br>05/24/99 | If no fees are enclosed, the address should include the words "Box Responses - No Fee." |
| **REF. NO.**<br>2064.017 | Please provide in all correspondence:<br>1. Filing Date, serial number, mark and Applicant's name.<br>2. Mailing date of this Office action.<br>3. Examining Attorney's name and Law Office number.<br>4. Your telephone number and ZIP code. |

FORM PTO-1525 (5-90)          U.S. DEPT. OF COMM. PAT. & TM OFFICE

---

**A PROPER RESPONSE TO THIS OFFICE ACTION MUST BE RECEIVED WITHIN 6 MONTHS FROM THE DATE OF THIS ACTION IN ORDER TO AVOID *ABANDONMENT*.** *For your convenience and to ensure proper handling of your response, a label has been enclosed. Please attach it to the upper right corner of your response. If the label is not enclosed, print or type the Trademark Law Office No., Serial No., and Mark in the upper right corner of your response.*

RE: Serial Number: 75/586198 SANTA FE PROPERTIES

The assigned examining attorney has reviewed the referenced application and determined the following.

**REFUSAL TO REGISTER-MARK IS PRIMARILY GEOGRAPHICALLY DESCRIPTIVE**
The examining attorney refuses registration on the Principal Register because the mark is primarily geographically descriptive of the applicant's services.  Trademark Act Section 2(e)(2), 15 U.S.C. Section 1052(e)(2); TMEP section 1210.05.

The applicant applied to register the mark SANTA FE PROPERTIES for real estate services, namely brokerage, appraisals, management, listing of real properties, leasing, and related services.

The primary significance of the term "SANTA FE" is geographic, and applicant's services come from the geographical place named in the mark.  Therefore, a public association of the services with the place is presumed. *In re California Pizza Kitchen*, 10 USPQ2d 1704 (TTAB 1989); *In re Handler Fenton Westerns, Inc.*, 214 USPQ 848 (TTAB 1982).


EXHIBIT

S/586198                                 -2-

The term PROPERTIES is highly descriptive of the applicant's services as evidenced by the applicant's use of the wording in its own recitation of services. The addition of a generic or highly descriptive term to a geographic term does not obviate a determination of geographic descriptiveness. *In re BankAmerica Corp.*, 231 USPQ 873 (TTAB 1986); *In re Cambridge Digital Systems*, 1 USPQ2d 1659 (TTAB 1986).

The mark immediately names the exact nature and purpose of the services and the place from which the services emanate. According, the examining attorney refuses registration on the Principal Register under Section 2(e)(2).

**OPTION FOR OVERCOMING THE REFUSAL UNDER SECTION 2(e)(2):**

**CLAIM OF ACQUIRED DISTINCTIVENESS UNDER 2(f)**
The application indicates use of the mark for a significant time. Therefore, the applicant may amend to seek registration under Trademark Act Section 2(f), 15 U.S.C. Section 1052(f), based on acquired distinctiveness. If the applicant chooses to do so by using the statutory suggestion of five years of use as proof of distinctiveness, the applicant should submit a claim of distinctiveness that reads as follows, if accurate.

> The mark has become distinctive of the services through the applicant's substantially exclusive and continuous use in commerce for at least the five years immediately before the date of this statement.

The applicant must provide this statement supported by an affidavit or a declaration under 37 C.F.R. Section 2.20. 37 C.F.R. Section 2.41(b); TMEP section 1212.05(d).

The following is a properly worded declaration under 37 C.F.R. Section 2.20. At the end of the response, the applicant should insert the declaration signed by corporate officer.

The undersigned, being hereby warned that willful false statements and the like so made are punishable by fine or imprisonment, or both, under 18 U.S.C. 1001, and that such willful false statements may jeopardize the validity of the application or any resulting registration, declares that the facts set forth in this application are true; all statements made of his/her own knowledge are true; and all statements made on information and belief are believed to be true.

_____
(Signature)

_____
(Print or Type Name and Position)

_____
(Date)

**POTENTIAL CITATION OF PRIOR-FILED APPLICATION**
Although the examining attorney has searched the Office records and has found no similar

-3-

1052(d), the examining attorney encloses information regarding pending Application Serial No. 75/571891. 37 C.F.R. Section 2.83.

There may be a likelihood of confusion between the applicant's mark and the mark in the above noted application under Section 2(d) of the Act. The filing date of the referenced application precedes the applicant's filing date. If the earlier-filed application matures into a registration, the examining attorney may refuse registration under Section 2(d).

Although the examining attorney has refused registration, the applicant may respond to the refusal to register by submitting evidence and arguments in support of registration.

If the applicant chooses to respond to the refusal to register, the applicant must also respond to the following requirements.

## RECITATION OF SERVICES

The wording "and related services" in the recitation of services is unacceptable as indefinite because the recitation of services must be all-inclusive. The applicant may amend this wording to "Real estate escrow services and/or Real estate site selection," if accurate. TMEP section 1301.05.

Please note that, while an application may be amended to clarify or limit the identification, additions to the identification are not permitted. 37 C.F.R. Section 2.71(b); TMEP section 804.09. Therefore, the applicant may not amend to include any services that are not within the scope of the services recited in the present identification.

## DISCLAIMER

Even if the applicant amends the application to seek registration on the Principal Register under Section 2(f), the applicant must disclaim the highly descriptive wording "PROPERTIES" apart from the mark as shown. Trademark Act Section 6, 15 U.S.C. Section 1056; TMEP sections 1213 and 1213.02(a). The wording is merely descriptive as evidenced by the applicant's use of the term in its own recitation of services.

The computerized printing format for the *Trademark Official Gazette* requires a standard form for a disclaimer. TMEP section 1213.09(a)(i). A properly worded disclaimer should read as follows:

No claim is made to the exclusive right to use PROPERTIES apart from the mark as shown.

See *In re Owatonna Tool Co.*, 231 USPQ 493 (Comm'r Pats. 1983).

Trademark Act Section 6(a), 15 U.S.C. Section 1056(a), states that the Commissioner may require the applicant to disclaim an unregistrable component of a mark. Trademark Act Section 2(e), 15 U.S.C. Section 1052(e), bars the registration of a mark which is merely descriptive or deceptively misdescriptive, or primarily geographically descriptive or deceptively misdescriptive of the goods. Therefore, the Commissioner may require the disclaimer of a portion of a mark which, when used in connection with the goods or services, is merely descriptive or deceptively misdescriptive, or primarily geographically descriptive or deceptively misdescriptive. If an applicant does not comply with a disclaimer requirement, the examining attorney may refuse registration of the entire mark. TMEP section 1213.01(b).

75/586198                                    -4-

A disclaimer does not remove the disclaimed matter from the mark. It is simply a statement that the applicant does *not* claim exclusive rights in the disclaimed wording or design apart from the mark as shown in the drawing.

## AUTHORITIES AND RESPONSE GUIDELINES

The following authorities govern the processing of trademark and service mark applications: The Trademark Act, 15 U.S.C. Section 1051 *et seq.*, the Trademark Rules of Practice, 37 C.F.R. Part 2, and the *Trademark Manual of Examining Procedure* (TMEP).

In all correspondence to the Patent and Trademark Office, the applicant should list the name and law office of the examining attorney, the serial number of this application, the mailing date of this Office action, and the applicant's telephone number.

Suellen C. Hickey
Trademark Attorney
Law Office 112
(703) 308-9112, ext. 110

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE
## BEFORE THE TRADEMARK TRIAL AND APPEAL BOARD

In the matter of trademark Registration No.: 2,382,332
For the Mark: SANTA FE PROPERTIES
Date Registered: September 5, 2000

French & French Fine Properties, Inc.,

          Petitioner,

v.

Santa Fe Properties, Inc.,

          Registrant.

## PETITION TO CANCEL

To the best of Petitioner's knowledge, the name and address of the current owner of the registration are:

        Santa Fe Properties, Inc.
        1000 Paseo de Peralta
        Santa Fe, New Mexico 87501

The above-identified Petitioner believes that it will be damaged by the above-identified registration, and hereby petitions to cancel the same.

The grounds for cancellation are as follows:

1.     French & French has been, since 1982, a full service real estate broker in the Santa Fe, New Mexico area.  Petitioner represents sellers and buyers of properties and currently employs approximately 120 agents.  Nearly all of the agents have their own individual websites for marketing and advertising of their listings.  Registrant, Santa Fe Properties, Inc. is also engaged in the brokerage business for properties in the

Page -1-

EXHIBIT

2

Santa Fe area.

## COUNT I – DESCRIPTIVENESS

2.      The City of Santa Fe has existed since the 17th Century.  It is a well known destination resort in the State of New Mexico.  The city is "upscale" in the sense that the properties are often in the seven figure price range.  The primary significance of the city-name -- Santa Fe -- is geographic.

3.      As in most cities, there are a myriad number of businesses that utilize the city name as part of a business identifier.  In the Santa Fe telephone directory, there are 704 businesses using the city-name, Santa Fe, as part of their tradename.  In many of these tradenames, the words "Santa Fe" are the first words in the business identifier. There are approximately 14 real estate service providers in and around the Santa Fe area that use the city-name "Santa Fe" as part of their tradename.  Purchasers and sellers of properties in the Santa Fe area will associate the services of a real estate firm that are marketed using the city-name "Santa Fe" with that city.  The purchasers would be likely to think that the services originate in Santa Fe.  Thus the mark identifies the geographic origin of the services.

4.      A search of the United States Patent and Trademark Office records indicates that there are over 397 registrations that include the words "Santa Fe".  There are also hundreds of descriptive identifiers of websites utilizing the city name, Santa Fe.

5.      The words "Santa Fe" are primarily geographically descriptive of the city as the origin of numerous products and services including real property brokerage.

6.      The word "properties" is used extensively in the real estate business. "Properties" refers to the products, i.e., homes and land.  The dictionary definition of

Page -2-

"properties" found at www.dictionary.com is:

1.  Something owned; a possession.
2.  A piece of real estate: has a swimming pool on the property.
3.  Something tangible or intangible to which its owner has legal title: properties such as copyrights and trademarks.
4.  Possessions considered as a group.

(Emphasis added)  "Properties" is of course the plural of "property".  In the legal field, "real property" refers to a branch of law that relates to homes and land as well as commercial land and buildings

7.      In the business of real estate services, "properties" is merely descriptive of a characteristic, or feature or purpose of the services.

8.      The term "Santa Fe Properties" is a juxtaposition of a city-name that is primarily geographically descriptive and a merely descriptive word for the services that are offered in the field of real estate brokerage.

9.      In May 2004 an action was brought by registrant alleging trademark infringement based on the registered mark SANTA FE PROPERTIES against Petitioner and several agents of Petitioner.  Civil Action No. CIV04-0518 in the Federal District Court for the District of New Mexico.  Registrant claimed that Petitioner, one of whose agents used the web domain address "www.prestigesantafeproperties.com", was infringing upon the mark SANTA FE PROPERTIES and that the words "Santa Fe" and "properties" were used in the metatags of the web sites of a number of agents of Petitioner.

10.     Because of the financial resources of registrant and the desire of Petitioner to avoid the oppressive costs of litigation, the parties entered into a Stipulated Order and Judgment for Permanent Injunction.

11.     The injunction provided that

[N]othing shall preclude Defendants from using the words

"Santa Fe" or "properties" (lower case letters) or "living"

(lower case letters, but not in juxtaposition, and only in

describe text.

12.     Registrant, 11 months after entry of the stipulated order filed a Motion for

Order to Show Cause why Petitioner should not be held in contempt of the entered

judgment because one of its agents was using the web address

"www.santafefinerproperties.com". That motion is currently pending at the time of the

filing of this Petition to Cancel.

13.     Registrant has asserted that the registered mark SANTA FE

PROPERTIES is infringed by the descriptive usage of the words "Santa Fe" and

"properties" without regard to the relative position of the words.

14.     Petitioner has and will continue to be harmed by the existence of

Registration No. 2,382,332 by being deprived of the use of a city-name that is primarily

geographically descriptive and a word that is merely descriptive of real estate brokerage

services.

15.     Petitioner will be unable to properly advertise their real estate brokerage

services in the Santa Fe community if they are entirely deprived from use of the words

"Santa Fe" and "properties". Because the registration provides a *prima facie* exclusive

right to the use of the words "Santa Fe properties" and registrant's aggressive extension

of the rights granted in the registration, Petitioner has been damaged in its business

and will continue to be damaged by the continued registration of the mark SANTA FE

PROPERTIES.

## COUNT II – FRAUD

16      On November 10, 1998, Registrant filed Application Serial No. 75/586,198 for registration of the mark SANTA FE PROPERTIES alleging a first use and first use in interstate commerce date of "not later than" January 1, 1986.

17      Ultimately, per Registrant's amendment during examination of the application, the basis for registration in the Principal Register of the mark SANTA FE PROPERTIES was under Section 2(f).

18      Registrant did not exist as a legal entity on January 1, 1986, the alleged date of first use; instead, Registrant became a legal entity on July 2, 1987, the date of Registrant's incorporation.

19      Registrant's application on the bases of Section 2(f) was materially dependent on the truth of the first use date provided by Registrant.

20.      Registrant knew that it did not exist as a legal entity on the date of the alleged first use.

21.      There is no record of a prior registration or assignment of the mark SANTA FE PROPERTIES to Registrant.

22.      Because Registrant did not exist at the time of its alleged first use date, Registrant committed fraud before the United States Patent and Trademark Office in procuring its registration for the mark SANTA FE PROPERTIES.

23.      A registration procured by fraud must be cancelled.

Dated this 18th day of April, 2005.

PEACOCK MYERS & ADAMS

By

Paul Adams
201 Third Street, Suite 1340
Albuquerque, NM 87102
(505) 998-1500
(505) 242-2542 facsimile
www.pauladams@peacocklaw.com

Attorneys for Petitioner

er

| | Santa Fe, NM 87501<br>UNITED STATES |
|---|---|
| **Goods/Services<br>Subject to<br>Cancellation** | Class 036. First Use: 1986/01/01 , First Use In Commerce: 1986/01/01<br>Goods/Services: real estate services, namely, brokerage, appraisals,<br>management, listing of real properties, and leasing of real properties |

| **Attachments** | Doc050420.pdf ( 6 pages ) |
|---|---|

| **Signature** | /Paul Adams/ |
|---|---|
| **Name** | Paul Adams |
| **Date** | 04/18/2005 |

## Return to ESTTA home page    Start another ESTTA filing

| .HOME | INDEX| SEARCH | *e*BUSINESS | CONTACT US | PRIVACY STATEMENT